******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM LUKAS III *v.* JASON L. MCCOY ET AL.
(AC 36463)

Lavine, Keller and Harper, Js.

*Argued February 10—officially released May 26, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*James H. Howard*, for the appellant (plaintiff).

*Lorinda S. Coon*, with whom, on the brief, were *Kay A. Williams* and *Herbert J. Shepardson*, for the appellee (named defendant).

*Opinion*

LAVINE, J. The plaintiff, William Lukas III, appeals from the judgment of the trial court after it denied his motions to set aside the verdict and for a new trial. The plaintiff filed these motions after a jury returned a verdict in favor of the defendant Jason L. McCoy, doing business as the Law Offices of Jason L. McCoy, on the plaintiff's claim of legal malpractice.[1] The plaintiff brought this legal malpractice action against the defendant, his former attorney, after his chapter 13 bankruptcy petition (petition) was dismissed by the bankruptcy court. On appeal, the plaintiff claims that the trial court (1) abused its discretion by denying his motion to set aside the verdict and for a new trial, (2) erred in submitting the question of confirmability to the jury, and (3) failed to instruct the jury on the applicable bankruptcy statute. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 2005, the plaintiff filed the petition and retained the defendant to represent him. On or about June 13, 2006, the bankruptcy court held a hearing on the plaintiff's petition to determine whether to confirm or dismiss it. The defendant failed to attend the hearing and the chapter 13 bankruptcy trustee requested that the bankruptcy court dismiss the petition with a 180 day bar on refiling.

Following the dismissal of his petition, the plaintiff brought this action sounding in legal malpractice against the defendant for his alleged negligent representation. The plaintiff claimed, inter alia, that the defendant failed to attend the June 13, 2006 hearing and to communicate with and to provide the necessary documentation to the chapter 13 bankruptcy trustee. The plaintiff argued that the defendant's alleged negligence resulted in the bankruptcy court dismissing his petition with a 180 day bar on refiling. On December 12, 2013, the plaintiff filed his fourth amended complaint. The defendant answered, denying that he had acted negligently, and he alleged a special defense of contributory negligence.

On December 13, 2013, following a trial, the jury returned a general verdict in favor of the defendant.[2] No interrogatories were submitted to the jury. On December 19, 2013, the plaintiff filed motions to set aside the verdict and for a new trial. In support of these motions, the plaintiff asserted that the jury's verdict was against the weight of the evidence. The court denied the motions and rendered judgment for the defendant on January 6, 2014. The plaintiff did not ask the court to articulate the basis for its denial of his motions. This appeal followed. Additional facts will be set forth as necessary.

I

In his motion to set aside the verdict, the plaintiff claimed that he had "provided ample, compelling testimony regarding the defendant's breach of the standard of care, as well as the confirmability and subsequent affordability of a chapter 13 plan," and, therefore, the verdict was against the evidence. On appeal, the plaintiff claims that the court abused its discretion in denying his motions to set aside the verdict and for a new trial. In response, the defendant contends that the general verdict rule bars review of that claim. We agree with the defendant.

"The general verdict rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . . In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend upon the trial errors claimed by the appellant. Thus, unless an appellant can provide a record to indicate that the result the appellant wishes to reverse derives from the trial errors claimed, rather than from the other, independent issues at trial, there is no reason to spend the judicial resources to provide a second trial." (Internal quotation marks omitted.) *Brown* v. *Bridgeport Police Dept.*, 155 Conn. App. 61, 68–69, 107 A.3d 1013 (2015).

"[A]n appellate court will presume that the jury found every issue in favor of the prevailing party . . . and decline further appellate review. . . . Where there was an error free path available to the jury to reach its verdict, and no special interrogatories were submitted showing which road the jury went down, any judgment rendered on such a verdict *must* be affirmed. . . . [I]n a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 69.

In *Curry* v. *Burns*, 225 Conn. 782, 801, 626 A.2d 719 (1993), our Supreme Court held that the general verdict rule applies to the following five situations: "(1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had

been asserted as the case was tried but that should have been specially pleaded." The fourth situation is implicated in the present case, as the defendant, in his answer, denied the allegations of negligence set forth in the complaint and pleaded a special defense of contributory negligence.

In this case, it is unclear whether the jury's verdict was premised on a finding of an absence of negligence on the part of the defendant or on a finding of contributory negligence with respect to the plaintiff. See *O'Brikis* v. *Supermarkets General Corp.*, 34 Conn. App. 148, 153, 640 A.2d 165 (1994). The record reveals that the plaintiff did not request any interrogatories that would have clarified the jury's findings. "When there are alternative bases for the verdict, it is necessary for the interrogatories to reveal the actual grounds for the jury's verdict in order for the general verdict rule to be precluded." (Internal quotation marks omitted.) *Malaguit* v. *Ski Sundown*, 136 Conn. App. 381, 388, 44 A.3d 901, cert. denied, 307 Conn. 902, 53 A.3d 218 (2012). Accordingly, we conclude that the general verdict rule precludes review of the plaintiff's claim.

## II

As a preliminary matter, the plaintiff seeks review of his second and third claims under the plain error doctrine.[3] Our review of the record reveals that the plaintiff did not file a request to charge related to the issues on appeal, take an exception to the charge, or object to the instructions the court gave to the jury.[4] Accordingly, he did not preserve his second and third claims for appeal. We decline to reverse the trial court's judgment on the basis of plain error for the reasons that follow.

Although the plaintiff's second claim is that the court erred in submitting to the jury the question of whether his petition was confirmable, the actual question before the jury was whether the defendant was responsible for the dismissal of the plaintiff's petition. In his third claim, the plaintiff claims, in the alternative, that if the question of the confirmability of the petition was properly before the jury, the court failed to instruct it on how to analyze the feasibility of the chapter 13 bankruptcy plan. Given that the plaintiff's third claim— that the court abused its discretion because it failed to instruct the jury on the applicable bankruptcy statute— is subsumed by his second claim, we will address them simultaneously. The following additional facts are pertinent to the plaintiff's claims.

In his complaint, the plaintiff alleged that the defendant breached the standard of care of lawyers practicing before the bankruptcy court by failing to attend court hearings and to present information and documents to support the feasibility of the plaintiff's chapter 13 bankruptcy plan. The defendant alleged contributory

negligence as a special defense.

During the trial, portions of the bankruptcy court hearing transcripts were read into the record. The following pertinent evidence was before the jury. The chapter 13 bankruptcy trustee stated the following to the bankruptcy court: "Can that case be dismissed? I'm asking for a 180 day bar. It's the [plaintiff's] third filing. There's numerous reasons not to confirm, Your Honor, including the fact that the [plaintiff] has hundreds of thousands of dollars of debt which he cannot afford to repay. He's also over $7000 behind in his trustee payment." After the bankruptcy court dismissed his petition with a 180 day bar on refiling, the plaintiff filed a motion to vacate the dismissal. The trustee stated the following before the bankruptcy court regarding the plaintiff's motion to vacate: "Your Honor, if it was just a mistake that people didn't show up on the right day, I would probably not object to the motion to vacate the dismissal of this case, but there are numerous problems with this case that were above and beyond the fact that no one appeared at the last hearing date. The biggest is that I see no way [the plaintiff] could possibly ever propose a feasible plan. . . . The information I do have shows that there's no way that [the plaintiff] could ever propose a plan." On the basis of the trustee's opposition, the bankruptcy court denied the motion to vacate.

Furthermore, the defendant testified that the plaintiff failed to provide him with the necessary information and documents to support a feasible chapter 13 bankruptcy plan. The defendant testified: "[W]e thought we had some type of plan that could get confirmed if we could just get the material that would substantiate it. We did not have it at that point for [the plaintiff]. . . . He hadn't got us the material. It was just we couldn't support a claim."

"[T]o prove any legal malpractice claim, a plaintiff must establish the four necessary elements: (1) an attorney-client relationship; (2) a wrongful act or omission by the attorney; (3) proximate cause; and (4) legal damages. . . . Put another way, a plaintiff must prove that there existed an attorney-client relationship and that the client sustained legal injury or damage that proximately was caused by the attorney's wrongful act or omission." (Citation omitted.) *Lee* v. *Harlow, Adams & Friedman, P.C.*, 116 Conn. App. 289, 302, 975 A.2d 715 (2009).

Throughout the trial, the defendant denied that he was negligent and put forth evidence that he did not proximately cause the plaintiff's injuries. Specifically, the defendant argued that the plaintiff's negligence led to the dismissal of the plaintiff's petition. In essence, the element of proximate cause was governed by the question of who was responsible for the dismissal of the plaintiff's petition.

The plaintiff argues, in his second claim, that the

court failed to apply the applicable bankruptcy statute, 11 U.S.C. § 1324, which authorizes a bankruptcy judge, not a jury, to determine whether to confirm a chapter 13 bankruptcy plan. Thus, the plaintiff argues that in deliberating on proximate cause, the jury improperly ruled upon the validity of plaintiff's petition, which only could be determined by a judge. Contrary to the plaintiff's contention, the issue before the jury was a factual one that did not require the jury to resolve the issue of the confirmability of the petition. Instead, the issue was whether the acts or omissions of the plaintiff or defendant proximately caused the dismissal of the plaintiff's petition. The defendant correctly argues that there was sufficient evidence produced from which the jury reasonably could have concluded that the plaintiff: "(1) was providing inaccurate information and failing to provide requested information; (2) failed to make required payments; (3) attempted to manipulate his reported income; and (4) could not produce sufficient supporting documentation to establish a feasible chapter 13 [bankruptcy] plan, and that these factors resulted in the dismissal of his bankruptcy case." Because there was a factual dispute about whether the plaintiff provided the defendant with the information necessary to devise a chapter 13 bankruptcy plan, the issue of proximate cause was an appropriate issue for the jury to decide. See *Cammarota* v. *Guerrera*, 148 Conn. App. 743, 755, 87 A.3d 1134 ("The question of proximate causation . . . belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." [Internal quotation marks omitted.]), cert. denied, 311 Conn. 944, 90 A.3d 975 (2014).

The plaintiff's third claim is that even if the question of the viability of his petition was properly before the jury, the court failed to instruct the jury on the applicable bankruptcy statute, 11 U.S.C. § 1325. Because the issue of whether the plaintiff's petition was confirmable was not before the jury, the plaintiff's third claim fails.

For the foregoing reasons, this case does not present the type of extraordinary situation that warrants reversal due to plain error. See footnote 3 of this opinion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Jason L. McCoy, Attorney, LLC," and "McCoy Law Firm, LLC," were also named as defendants, but the plaintiff withdrew his action as to them prior to trial. For convenience, we refer to Jason L. McCoy as the defendant in this opinion.

[2] The verdict stated: "We the jury, find the issues for the defendant, Jason McCoy, d/b/a The Law office of Jason L. McCoy, and against the plaintiff, William Lukas III."

[3] "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they

threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) State v. *Sanchez*, 308 Conn. 64, 76–77, 60 A.3d 271 (2013).

[4] The court provided both parties with a draft of its jury instructions for review. The plaintiff did not take an exception to the court's jury instructions or object to the instructions.

———————————————————